Burgess, J.
The plaintiff Mary J. Hart, her husband, O. Y. Hart, joining with her, prosecutes this action against the defendant, who had previously been her landlord, for damages in combining with other tenants of defendant, to wit: Mrs. Emma Conway and family, and one John Rogers, who occupied the first floor and basement of the same building, while plaintiff occupied the second floor, to drive the plaintiffs and their family out of said building. At the conclusion of the evidence offered by plaintiff, the defendant interposed a demurrer thereto, which was sustained. Plaintiffs then took a nonsuit with leave to move to set the same aside, and, the motion being overruled, they appealed.
The petition alleges that, on the twenty-first day of November, 1892, while plaintiffs and family were absent from home, in pursuance of a conspiracy entered into by defendant, said Conway and Rogers, the entrance door to the building occupied by plaintiffs, was closed by said Rogers and Conway, and they maliciously and unlawfully refused to open said door when the plaintiff Mary and her' daughter returned to said house for the purpose of going to the part occupied by them, so that she was compelled to seek shelter elsewhere until an hour after dark that night, when they and their family were enabled to get in; that on the *104 next day in pursuance of said conspiracy to drive plaintiffs and their family from said house, the defendant unlawfully broke into and took possession of this said house, and then and there forced and broke open and from its hinges and carried away the door leading from the stairway of said premises into said second floor, and tore down the partition at the head of said stairway which separated said second floor from the balance of said house and protected it from the cold coming in from the outside door, thereby rendering the part of the house occupied by plaintiffs unfit for occupation.
The petition then alleges that, in pursuance of said conspiracy, defendant, on the twenty-fourth day of November, 1892, procured and caused the entrance door to said building to be opened in the nighttime and left open, so that the cold air from the outside was let into their apartments, by reason of which plaintiffs and their children were taken sick, suffered greatpain, and incurred heavy expenses for nursing and medical attention; that on the twenty-fifth day of November, • 1892, in furtherance of said conspiracy, and in the absence of the husband of said Mary, one D. L. Elder was sent to the house for the purpose of terrorizing and frightening the said Mary, and did threaten to arrest her, thereby greatly frightening and terrorizing her and her daughter; that again, on the twenty-sixth day of November, 1892, one J. Cunningham in pursuance of the direction of defendant, intruded himself into plaintiffs’ home, and demanded that 'he should be permitted to go into the bath room, on said second floor, which was part of the premises rented by plaintiffs, and, by threatening to break the door open if it was not opened, compelled her to open the same, and told her that if the door was not left open that she would be arrested, at the same time displaying an officer’s star. The *105 damages are laid at $5,000, for which, judgment is asked.
The answer admits that plaintiffs are husband and wife, and denies all other allegations, except as specifically admitted. Then by way of special defense it avers that the house, the second floor of which was occupied by plaintiffs, was a tenement house, occupied by different tenants, and the entrance halls and water closets pertaining thereto were used and enjoyed by all of them alike, as plaintiffs well knew, and with their knowledge and consent. The answer then proceeds as follows:
“Defendant further states that after having occupied said upper part of said house said O.Y. Hart asked to have a temporary partition put across a portion of said hall so as to protect himself and family from the scent of cooking arising from the lower floor and defendant consented thereto, with the understanding and agreement that said partition should not be constructed or used so as to hinder the family and tenants who occupied the lower floor from the use of said halls and water-closets, and with that agreement defendant hired and paid said O. Y. Hart for so building said partition, but that when built, contrary with defendant’s agreement with said Hart, said partition was so built and used that it prevented the tenants on the lower floor from the use of the hall and water-closets, and, without objection from said Hart, defendant without unnecessary annoyance to the tenants on either floor had said partition removed so as to enable the tenants on the lower floor to enjoy the use of said hall and water-closets, as he was required to do by section 100 of article 6 of chapter 4 of said ordinances of said city and as he was also required to do by section 116 of said article of said chapter of said ordinances of said city.”
*106 Plaintiffs in their reply to the answer denied all new matter contained therein.
It was earnestly insisted by counsel for plaintiffs, both in oral argument and in brief, that there was a conspiracy shown by the evidence to have been entered into between defendant and others to harass, annoy, and injure the plaintiff Mrs. Hart, and that in pursuance thereof she was maltreated in various ways .and on different occasions, as alleged in the petition.
As defendant himself was not shown to have been guilty of any unlawful act toward Mrs. Hart, in order that he might be held to respond in damages for the acts of others not parties to this action, it was absolutely necessary to show that some injury resulted to her in pursuance of some conspiracy formed by such persons with defendant, or that some trespass was committed on her possession, person, or property, by his direction, with his knowledge and consent, or for his use and benefit.
The most satisfactory definition of conspiracy to be found in any of the adjudicated cases is, perhaps, that given by Shaw, J., in Commonwealth v. Hunt, 4 Metc. (Mass.) 111, in which he says: “Without attempting to review and reconcile all the eases, we are of opinion that, as a general description, though perhaps not a precise and accurate definition, a conspiracy must be a combination of two or more persons, by some con-certed action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means. We use the terms criminal or unlawful, because it is manifest that many acts are unlawful, which are not punishable by indictment or other public prosecution; and yet there is no doubt, we think, that a combination by numbers to do them would be an unlawful conspiracy, and punishable by indictment.” He further adds: *107 “But yet it is clear, that it is not every combination tó do unlawful acts, to the prejudice of another, by a concerted action, which is punishable as conspiracy.”
As conspiracy can rarely ever be shown by direct and positive evidence it must, of necessity, as a general rule, be shown by facts and circumstances. And, after it has been shown to have existed, any statements or admissions made by a co-conspirator during its continuation with respect to' its purpose and design are receivable in evidence against himself or against his fellows, as well also as acts done in pursuance of such concerted plan. State v. Walker, 98 Mo. 95, and authorities cited.
While evidence of the acts and declarations of one conspirator are admissible in evidence against others engaged ini the same conspiracy, within the rule announced, it rests largely in the discretion of the trial court as to when that proof shall be made, and, unless it is made, such evidence is inadmissible.
We have looked in vain through the entire record to find if there was any evidence tending to show a conspiracy between defendant, Eogers, and Conway to do any unlawful act toward Mrs. Hart, or which would in any manner affect her rights. There does not appear to have been even a well grounded suspicion of anything of the kind, hence the trial court committed no error in excluding as evidence the acts and declarations of Mrs. Conway and family. State v. Ross, 29 Mo. 51; 3 Greenl. Ev., sec. 94.
There was very little evidence tending to show that the door and partition were torn down and carried away by defendant’s direction, or that it was done in his interest; but, admitting, for the sake of the argument, that such was the case, Mrs. Hart could not maintain an action for damages occasioned by reason thereof, and the petition is not predicated upon the right of the *108 husband to recover for such injury. The petition states no cause of action as to him.
If the door and partition were taken away by the direction of defendant against the will and consent of the plaintiff: O. Y. Hart then a cause of action accrued to him by reason of the trespass to . his possession, for which he, and not his wife, could maintain an action. The rent for the apartments was sometimes paid by the wife, at other times by the husband. He was the head of the family, in the possession of the apartments, and whatever wrong was done with respect to the door and partition was against him. He was not, strictly speaking, a nonentity, but was in the exclusive possession of the leased premises and could alone sue for injuries thereto, during the continuation of his possession. Kanaga v. Railroad, 76 Mo. 207.
The other matters complained of were discretionary with the court, and in such circumstances this court will not interfere unless it appear that such discretion has been in some way abused. It does not so appear in this case. The judgment is affirmed.
All of this division concur.