VERIDEN v. McLEOD.

1. CONSPIRACY—ELECTIONS—ILLEGAL COUNT—PUBLIC OFFICERS.

A declaration averring that plaintiff, a saloonkeeper, became a candidate for election as a trustee of the village of Grosse Pointe Shores, that the defendants were the village council and were inspectors of election, that defendants did not want a saloonkeeper upon the board and conspired together to deprive him of the election, that they counted the votes dishonestly, and although plaintiff was elected by a plurality of two votes they declared his opponent elected to the office, that one of the defendants pushed a ballot cast for the plaintiff into the box with the point of a pencil and thereby placed a distinguishing mark upon it, that the defendants failed to seal the ballot boxes as required by law and refused to recount them on petition of the defeated candidate because the boxes were not locked and sealed, sufficiently alleged facts constituting a cause of action.

2. SAME—DEFINITION—COMBINATION.

A conspiracy is a combination of two or more persons by some concerted action to accomplish a criminal or unlawful purpose, or to accomplish a purpose not unlawful by criminal or illegal means.

3. SAME.

Where the evidence did not establish a joint assent of the minds of two or more defendants to effect the unlawful purpose of keeping plaintiff out of office as village trustee it was insufficient to sustain a verdict.

Error to Wayne; Mandell, J. Submitted January 16, 1914. (Docket No. 105.) Decided April 7, 1914.

Case by Frank S. Veriden against Alexander I. McLeod and others for conspiracy to deprive plaintiff of a public office. Judgment for defendants, on a verdict directed by the court. Plaintiff brings error. Affirmed.

*James H. Pound,* for appellant.

*William M. Mertz* and *Frank N. Renaud,* for appellees.

MOORE, J.   This case was commenced by declaration, the material parts of which are as follows:

"Frank J. Veriden, plaintiff in this suit, by James H. Pound, his attorney, comes into this court and complains of Alexander I. McLeod, Abner Larned, George Osius, Julius Hagar, William E. Roney, and Louis J. Girardin, defendants herein, in an action of trespass on the case, for that whereas, the defendants and this plaintiff are all residents of the village of Grosse Pointe Shores, * * * and are all citizens thereof, and the defendants are its village council, also were the inspectors of election at the village election, on the 8th day of April, 1912. * * * And whereas, plaintiff is a dealer in a legal business authorized to do business in the county of Wayne, * * * the defendants did, plaintiff avers, enter into a certain illegal, corrupt, and unlawful act, and series of acts and conspiracies, not only to deprive this plaintiff from carrying on his legal business, but plaintiff avers that he being in fact legally and lawfully nominated as a village trustee of said village of Grosse Pointe Shores, and striving for the said office, and the said defendants, and each of them, not wanting a saloonkeeper upon the board of village trustees, resolved to wrongfully keep him (plaintiff) from out thereof. * * * And plaintiff avers that defendants successfully did so keep him (plaintiff) out of said office of village trustee by the following unlawful, illegal, and wrongful acts: * * * They (the defendants) * * * wrongfully violated their oaths, and tricked plaintiff out of a recount, and out of the office of village trustee, to which he avers that he was legally elected, to wit, the village trustee of the village of Grosse Pointe Shores, in the manner following, amongst others: They did not honestly count the ballots cast at said election, except the first time, when plaintiff was elected by a plurality of two votes, but purposely counted them dishonestly, and pulled and hauled and marked them at different times during the

day, and counted plaintiff out of his honestly elected office of village trustee. By also deliberately not counting for this plaintiff ballots which were cast for him, and counting against him ballots that had been cast in his (plaintiff's) favor by which wicked, cruel, wanton, and crafty acts upon defendants' part, and particularly the action of defendant Alexander I. McLeod in pushing plaintiff's employee's ballot into the ballot box with a sharp-pointed lead pencil, point downward, plaintiff was deprived of several ballots by claimed distinguishing marks. Also in permitting the defendant William E. Roney, although disqualified to act upon said board of election inspectors, to act as their clerk. By all of which means this plaintiff avers that the defendants, and each of them, wholly deprived plaintiff of the office of village trustee of the village of Grosse Pointe Shores for a period of two years from a certain date, to wit, April 8, 1912. And plaintiff avers that, the said inspectors having canvassed the said vote at the spring election of the village of Grosse Pointe Shores, it then and there became and was their legal duty, as election inspectors and officers, to seal the said election boxes in the manner and form prescribed by law, and to lock them and care for them in a certain manner prescribed by the statutes of the State of Michigan, which course of procedure prescribed by law plaintiff avers that the defendants, to conceal their crime, they (the defendants) conspired one with the other not to do. And in pursuance of such criminal agreement did not in fact do. And plaintiff avers that he, in due form of law, demanded a recount and paid his money therefor, to wit, $10, and that, after divers days had been set for a hearing, plaintiff forced a hearing, when, lo and behold, the defendants, to whom the matter of a recount had been referred by the village council of Grosse Pointe Shores, as well as by the statutes of his State, these men (the defendants), who had violated the law, and who were criminals, refused to open the boxes and recount the ballots for the reason that they themselves, and each of them, had with criminal intent themselves disobeyed the law, and used that as a fulcrum to deny to this plaintiff a recount, for the reason that they (the defendants) had not properly locked and sealed the election box or had it

cared for thereafter. That this plaintiff avers it to be true that the integrity of this country depends upon an honest count, of an honestly cast ballot. That this homely maxim has become honored in its breach rather than in its observance in Michigan. And that, to wit, on a certain day, namely, April 10, 1912, defendants, and each of them, did advisedly nullify an election, disobey a statute of this State, and commit treason to this State, by robbing the electorate of the village of Grosse Point Shores of the fruitage of a regular village election held in the village of Grosse Pointe Shores, on a certain day, to wit, April 8, 1912; they (the defendants), and each of them, thereby depriving this plaintiff of the office of village trustee for the ensuing two years from a certain date, to wit, April 8, 1912, and of all the honors, profits, and emoluments arising by or therefrom, by denying to him (plaintiff) an honest count of said election ballots in the first instance, and a recount and an honest certification of the ballots cast at said election.

"And plaintiff avers that the defendants to the plaintiff then and there other wrongs and injuries did, to plaintiff's damage of $5,000, and therefore he brings this his suit."

The defendants pleaded the general issue.

When the case came on to be heard, counsel for defendant objected to any testimony being received for several reasons, among them:

"The more specific reasons that we base our objection to receiving testimony in this case are, as a matter of law, the plaintiff in this case was not shorn of his office, nor was he shorn of his * * * remedy by a count, or by recount having been denied. That this is a collateral proceeding, and an election cannot be inquired into in a collateral proceeding, whereas it could have been inquired into in a proper proceeding at that time, namely, *quo warranto* proceedings."

The objection was overruled, and nine witnesses were sworn on the part of the plaintiff. The petition of plaintiff for a recount was introduced in evidence. The record of the election proceedings was also produced, and Mr. Pound read into the record, "Moved

that two doubtful ballots be rejected." The record book was received in evidence, but is not made a part of the bill of exceptions. After the plaintiff rested, the court directed a verdict in favor of defendants, because plaintiff had failed to make a case. The suit is brought here by writ of error.

It is so difficult to state clearly the contention of counsel for appellant that it may be well to quote from his briefs.

The following appears in his original brief:

"Plaintiff is an American citizen, a native of the township of Grosse Pointe, in the county of Wayne, and a resident of the village of Grosse Pointe Shores. He was regularly nominated, and was a candidate for the office of trustee of the village of Grosse Pointe Shores, located in the counties of Wayne and Macomb, facing upon Lake St. Clair, at the village of St. Clair Heights charter election, in the year 1912. The defendants were the board of election inspectors and its clerks. The election inspectors being Alex. I. McLeod, Abner E. Larned, George Osius, and Julius Hagar. The clerks being Louis J. Girardin and William E. Roney. The last named, who was instructor as to ballots, assistant clerk, and general assistant at all points of the election, who succeeded in getting himself counted into office, when he was fairly beaten in spite of all his efforts by a majority of three in the plaintiff's favor. To do this, defendant McLeod put a distinguishing mark upon the ballot of Louis Devroy. By refusing to count a ballot for Mr. Veriden, which was plainly his, and by some other wrongful actions, which are not made clear, but Veriden's majority was not shown to have been overcome, except by an unjustifiable announcement. Plaintiff legally and properly demands a recount, which the law expressly gives him, and it is seemingly acceded to, when lo, these wrongdoers refuse to grant it, because they themselves had disobeyed the law in not sealing the locked box. Not having any sealing wax, I suppose. * * * The plaintiff has a case for the jury, not only against all the defendants, but against Alex. I. McLeod, for two different torts committed by himself upon this

record, without remonstrance from the other codefendants. * * * There is abundant circumstantial evidence in this case to warrant the submission to the jury of the question whether defendants did not conspire together to wrongfully, illegally, and criminally deprive plaintiff of the office to which he was duly elected by his fellow villagers, and to rob him (plaintiff) of his office. The defendants being for this purpose a band of election manipulators in the strongest sense of the term. I therefore, as a debt due to the laws of the State of Michigan, insist upon the reversal of this case, with costs in plaintiff's favor, that the law may rule, which, for some inexplicable reason, it is contended, it has not done so far in this case."

The following appears in the supplemental brief:

"Had there been a recount, I concede that for all I know there might have been no further trouble. There certainly would not, had Mr. Veriden not appeared to have a clear majority of the ballots, or had it been explained to him how his 47 votes legally shrunk to less than 44. Mr. Veriden wants no election he is not honestly entitled to. He is no ballot box manipulator, nor will he countenance any irregular action by others in his behalf. All he desired was a daylight count. He was entitled to it. Did he get it? No. And that, too, by reason of the confessed action of the defendants in not sealing the ballot box. And the worst part of the matter is that they (the defendants) had the physical power to open the box. It was in their possession. Plaintiff asking his rights under the statute. They or one of their number had the key. And the plaintiff was still insisting on the recount. He would not object, and could not be heard to complain, if the recount had been had, being done at his own demand and solicitation. But defendants would not give it. Why? Because they themselves had not done their ministerial duty in sealing the ballot box is the sole reason given for the refusal, and that objection is waived by the party most in interest. The one who has been dispossessed of his office, and upon whose objection? Why that of the person who promoted this violation of legal duty. The man who has gotten the office. What a shame! And then to

say that we have no remedy for such an action. It is a reflection on the law itself, I submit. I deny that I have changed my position, which I have occupied in this case from the first. I do maintain that, plaintiff having attempted to follow the remedy provided for him by the law, and having been prevented from obtaining the relief the law gave him by reason of the wrongful acts of omission in the not sealing of the ballot box by the inspectors of election, and of commission by marking and not counting the ballots, and the whole board by not counting those ballots which were cast for plaintiff, plaintiff has a cause of action against them for such damages as a jury may deem the honor of the office to be worth, as well as the inconvenience put upon the plaintiff by defendants' actions, together with at least nominal damages for the wrong itself. Counsel cannot, or perhaps will not, understand me. I ask no court to put the plaintiff into the office of village trustee of Grosse Pointe Shores which he might be ousted from, by a hostile board of trustees, in the village of Grosse Pointe Shores at any time immediately after the roll call. Plaintiff was, if elected, entitled to the certificate of election, to show that fact, viz., that he had been elected to this responsible office. The law of this State guaranteed to him a recount, if he made a proper demand and deposited his money, which he concededly did. This he did not get, through defendants' wrongful actions. And I do claim that I have a right in this case, as the counsel for the plaintiff, to show the true facts as I might in any other action of tort. That I may show all the defendants did, or any of them did, to plaintiff's injury, and to recover such damages therefor as may be deemed by them to be just, under the evidence, offered against the defendants, or any of them rendering them liable in this case.   *   *   * No person is trying to hold election inspectors liable for every irregularity, but when they by their act deny a candidate for office a right the legislature and governor of our State has given them, making it into a law, then there certainly should be a recovery. And if the inspectors were like the one who was sworn, Mr. Harger, the less the State have of such men the better."

It is also claimed the court improperly excluded testimony.

The defendants again urge that plaintiff is not pursuing his proper remedy, citing a great many authorities to be found in their brief. They also urge that the trial judge made a right disposition of the case.

We think it, upon this record, unnecessary to consider whether plaintiff is pursuing the proper remedy. A perusal of the record shows a willingness upon the part of the trial court to try the case upon the merits and to let in all the testimony except that which he thought was hearsay. It is possible that it might have been well to permit an answer to several questions, of which the following is an example:

"*Q.* Did you hear the announcement made by the clerk?

"*A.* I heard it. But I could not say how.

"*Q.* You heard an announcement?

"*A.* Yes, sir.

"*Q.* Do you recollect from the announcement that you heard read by the clerk. Do you know whether —do you know from that who the three were that were elected? (Objected to.)

"*The Court:* I will exclude it.

"*Mr. Pound:* Note an exception.

"*Mr. Pound:* I am only asking for what the clerk read off.

"*The Court:* That will be excluded."

Evidently the court thought, if the witness did not know how he heard the announcement which the clerk made, that it would be hearsay, and that he also thought that, if the clerk read from something, the paper from which he read would be the best evidence of what he read, because the court repeatedly ruled that what was done by the board might be shown.

Plaintiff was permitted to show, and did show, that as the result of the first count of the ballots it was announced that Mr. Veriden received 47 votes and Mr. Roney 44; that Mr. Roney requested that the votes

be counted again; and that they were counted at least once more, when it was announced that Mr. Roney received more votes, the number being stated, than Mr. Veriden and was declared elected.

Giving the testimony the most favorable construction possible for the plaintiff, it shows that, when one of the ballots was received and put in the ballot box, Mr. McLeod pushed it in with the sharpened end of a lead pencil; that, when the votes were counted, what we have above recited occurred; and one of the witnesses, who testified he was 10 or 15 feet away when it occurred, says the ballot which was pushed into the box with the pencil was rejected. The record also shows that plaintiff demanded a recount in due form and that a day was set for the hearing; that the plaintiff, Mr. Roney, and Mr. Jewett each appeared before the board with their respective attorneys; that Mr. McLeod moved to proceed with the recount, when objection was made by the attorneys for Mr. Roney and Mr. Jewett to a recount because the ballot boxes had not been sealed as the law required them to be sealed. The record also shows that plaintiff's counsel and the counsel for Mr. Roney and Mr. Jewett were heard at length, and that, after hearing them, the board decided not to make the recount.

We have already quoted at length from the declaration, and, as we understand it, the defendants are charged therein with a conspiracy by means of illegally rejecting ballots, and by illegally refusing a recount, to deprive plaintiff of an office to which he was legally elected, which conspiracy it is averred was carried out. This is a very grave charge and requires proof of a substantial nature to substantiate it.

There are many attempts to define the word "conspiracy" in 2 Words and Phrases. We quote one of them:

"The most satisfactory definition of 'conspiracy' to

be found in any of the adjudicated cases is perhaps that given by Shaw, J., in *Commonwealth* v. *Hunt,* 45 Mass. (4 Metc.) 111 (38 Am. Dec. 346), in which he says:

" 'Without attempting to review and reconcile all the cases, we are of the opinion that as a general description, though perhaps not a precise or accurate definition, a conspiracy must be a combination of two or more persons by some concerted action to accomplish some criminal or unlawful purpose, or to accomplish some purpose not in itself criminal, by criminal or unlawful means. We use the terms "criminal" or "unlawful" because it is manifest that many acts are unlawful which are not punishable by indictment or other public prosecution, and yet there is no doubt, we think, that a combination by numbers to do them would be an unlawful conspiracy, and punishable by indictment.'

"He further adds:

" 'But yet it is clear that it is not every combination to do unlawful acts to the prejudice of another which is punishable as conspiracy.' *Hart* v. *Hicks,* 129 Mo. 99, 105, 318 (31 S. W. 351, 352)."

"Conspiracies are of two kinds: (1) Against the public, or such as endanger the public health, violate public morals, insult public justice, destroy the public peace, or affect public trade; (2) against individuals, such as have a tendency to injure them, in their persons, reputation, or property. *Clinton* v. *Estes,* 20 Ark. 216, 224."

"The essentials of a conspiracy are: (1) A combining of two or more minds; (2) the purpose of the combining. *Commonwealth* v. *Grinstead,* 108 Ky. 59 (55 S. W. 720, 725 [57 S. W. 471])."

It is also said at page 1458, *Id.:*

"In order to establish a conspiracy, evidence must be produced from which a jury may reasonably infer the joint assent of the minds of two or more persons to the prosecution of the unlawful enterprise. *Drake* v. *Stewart* (U. S.), 76 Fed. 140, 142, 22 C. C. A. 104."

Giving every reasonable inference to what was shown or what was proposed to be shown by plaintiff,

we think it falls far short of showing concerted action on the part of any of the defendants to do plaintiff any wrong.

Judgment is affirmed.

MCALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.