RAMIREZ v BUREAU OF STATE LOTTERY

Docket No. 113073. Submitted October 9, 1990, at Lansing. Decided November 19, 1990, at 9:10 A.M. Leave to appeal sought.

Gilbert Y. Ramirez brought an action in the Court of Claims against the Bureau of State Lottery, seeking to have the bureau declare him the winner of the June 6, 1987, Lotto drawing and commence paying him a $1.5 million jackpot. The plaintiff had been unable to present the winning ticket to the bureau. The court, James T. Kallman, J., granted summary disposition in favor of the bureau, ruling that the plaintiff had failed to state a claim upon which relief can be granted, because presentment of the ticket was required before payment could be made. The plaintiff appealed.

The Court of Appeals *held:*

A winning ticket in the state lottery must be presented to the Bureau of State Lottery in order for the winnings to be received.

1. Under 1979 AC, R 432.16, the lottery commissioner may promulgate rules regarding the manner of awarding lottery prizes to holders of winning tickets. The rules so promulgated provide, inter alia, that a winning ticket must be presented for payment.

2. The lottery act is a specific statute which is complete in itself and applies to payment of lottery prizes even though the Uniform Commercial Code applies to commercial transactions in general. The plaintiff may not invoke the Uniform Commercial Code provisions relating to lost negotiable instruments in support of his claim.

3. Equitable relief is not available to the plaintiff in view of clear law governing the payment of lottery prizes.

Affirmed.

1. LOTTERIES — WINNERS — TICKETS.

A winning ticket in the state lottery must be presented to the

REFERENCES

Am Jur 2d, Bills and Notes §§ 779, 818; Commercial Code §§ 42, 66; Gambling §§ 264, 271.

State lotteries: actions by ticketholders against state or contractor for state. 40 ALR4th 662.

Bureau of State Lottery in order for the winnings to be received (MCL 432.11[2][e]; MSA 18.969[11][2][e]; 1979 AC, R 432.16).

2. Lotteries — Uniform Commercial Code — Negotiable Instruments.

The provisions of the Uniform Commercial Code generally relating to lost negotiable instruments do not apply to a claim by a person who is unable to present a winning ticket to the Bureau of State Lottery or its agents (MCL 440.3804; MSA 19.3804).

3. Lotteries — Winners — Equity.

Equitable relief is not available in an action against the Bureau of State Lottery brought by a person who claims to have lost a winning lottery ticket because the law requiring the presentment of the winning lottery ticket to the bureau or its agents for receipt of lottery winnings is clear.

*Elias J. Escobedo, Jr.,* for the plaintiff.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Keith D. Roberts,* Assistant Attorney General, for the defendant.

Before: Gillis, P.J., and Michael J. Kelly and Neff, JJ.

Gillis, P.J. Plaintiff appeals as of right from an order of the Court of Claims granting defendant's motion for summary disposition. We affirm.

On May 20, 1988, plaintiff read an article in a newspaper which stated that on June 6, 1987, a winning lottery ticket with the numbers 5, 12, 17, 22, 25, and 32 was purchased at Joslyn Market in Pontiac. The article stated that, if the prize of approximately $1.5 million was not claimed by 4:45 P.M. on June 6, 1988, the winnings would revert to the state's school-aid fund.

On June 6, 1987, plaintiff had purchased a Lotto ticket, containing five wagers, which was numbered 908610971 on the back, at Joslyn Market. Plaintiff had also purchased eleven daily three-

digit tickets and one daily four-digit ticket, which were numbered 908610973 through 908610984 on the back. Plaintiff had played the June 6, 1987, winning Lotto numbers on March 25 and 28, on April 1, 4, 8, 11, 15, 18, 25, 29, and on May 2, 6, 13, 20, 23, 27, 30, 1987, as well as on June 3, 1987. Plaintiff also played the June 6, 1987, winning numbers on June 10, and July 1, 4, and 8, 1987. On the days the plaintiff played the winning number, he also played the numbers 7, 16, 18, 21, 27 and 31, except for May 20, 1987, when plaintiff played the winning numbers for June 6, 1987. We note that on July 8, 1987, plaintiff apparently purchased two tickets, one which contained the numbers which won on June 6, 1987, and another which contained the numbers which won on June 6, 1987, and the numbers 7, 16, 18, 21, 27, and 31. Plaintiff has not produced Lotto tickets for April 22, May 9 and 16, or for June 13, 17, 20, 24, and 27, 1987.

On June 2, 1988, plaintiff's attorney wrote defendant, requesting the proceeds from the June 6, 1987, Lotto jackpot as well as verification of the winning ticket. Plaintiff claimed that, if defendant verified the winning ticket, defendant could discover whether the numbers 7, 16, 18, 21, 27, and 31 were played in combination with the winning number. If that was so, plaintiff argued that the evidence would be overwhelming that he had had the winning ticket which would have had the number 908610972 on the back.

On June 6, 1988, when plaintiff failed to receive a response to his request, he filed the instant lawsuit. Plaintiff claimed that defendant had a duty to verify whether he had held the winning ticket. Plaintiff also claimed that defendant breached the contract between the parties by failing to verify the winning ticket. Plaintiff requested

that defendant be compelled to verify the ticket and, upon verification, to award him the jackpot.

In response, defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(8). Defendant noted that pursuant to MCL 432.11; MSA 18.969(11), its commissioner was authorized to promulgate rules concerning the lottery. The rules could regulate "[t]he manner of payments of prizes to holders of winning tickets." MCL 432.11(2)(e); MSA 18.969(11)(2)(e). Defendant noted that 1979 AC, R 432.16 provided the following rules for claiming prizes:

(2) Holders of winning lottery tickets for a minor prize may take their ticket to a claims center or directly to the bureau for processing.

\* \* \*

(4) A claimant shall fill out a claim form, present the form with the winning ticket and receive a copy of the claim form as his receipt.

(5) When processing tickets for minor prizes, or for major prizes when especially authorized to do so by the bureau, the claims center shall retain 1 copy of the claim form and forward the winning ticket and 2 copies of the claim form to the bureau for validation. Upon validation a state treasurer's warrant shall be forwarded to the claimant in payment of the amount due. If a claim is not validated as proper, the claim shall be denied and the claimant promptly notified.

Defendant further noted tickets issued in 1987 contained the following language on the back:

TO CLAIM YOUR PRIZE

Present this ticket to any "Daily/Lotto Game" lottery agent for prize payment or receipt of claim. All prizes must be claimed within one (1) year of end date on ticket face. THIS TICKET IS A BEARER

INSTRUMENT SO TREAT IT AS IF IT WERE CASH. The Lottery recommends signing this ticket immediately after purchasing it.

Noting that contract principles applied to Lotto transactions, *Coleman v Bureau of State Lottery,* 77 Mich App 349, 351; 258 NW2d 84 (1977), lv den 402 Mich 837 (1977), defendant argued that presentment of the winning ticket was required before proceeds could be paid. Because plaintiff had not presented the winning ticket, defendant argued that he had failed to state a claim upon which relief could be granted.

Plaintiff claimed that defendant's motion was untimely because no discovery had taken place. Noting that a Lotto ticket is a bearer instrument, plaintiff claimed that MCL 440.3804; MSA 19.3804 should apply. MCL 440.3804; MSA 19.3804 provides:

> The owner of an instrument which is lost, whether by destruction, theft, or otherwise, may maintain an action in his own name and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms. The court may require security indemnifying the defendant against loss by reason of further claims on the instrument.

The official comment to that section provides in part:

> This section is new. It is intended to provide a method of recovery on instruments which are lost, destroyed or stolen. The plaintiff who claims to be the owner of such an instrument is not a holder as that term is defined in this Act, since he is not in possession of the paper, and he does not have the holder's prima facie right to recover under the

section on the burden of establishing signatures. He must prove his case. He must establish the terms of the instrument, and his ownership, and must account for its absence.

Plaintiff further argued that equity required that he be given a chance to prove that he was the owner of the winning ticket. In support of his position, plaintiff attached the affidavit of the manager of the Joslyn Market, who averred that he sold plaintiff a series of lottery tickets on June 6, 1987, and that plaintiff had played the winning numbers before and after June 6, 1987.

We note that MCL 440.1201(20); MSA 19.1201(20) defines a holder as

a person who is in possession of a document of title or an instrument or a certificated security drawn, issued or indorsed to him or her or to his or her order or to bearer or in blank.

On July 20, 1988, the court heard defendant's motion for summary disposition. At that time, the court adjourned the motion hearing and granted plaintiff sixty days to conduct discovery. The judge noted that he was not a gambler and, therefore, did not buy any tickets; however, the judge indicated that he would set aside his principles if he knew the winning numbers in advance.

In response to interrogatories, defendant stated that tickets qualifying for more than $5,000 must be presented to its Lansing office for validation and payment of a prize. Defendant also stated that if a ticket is presented more than thirty days after the date of drawing for which it was wagered, the validation and prize-payment process required approximately three weeks. Defendant confirmed that the winning ticket was purchased at Joslyn Market in Pontiac by examining the sales agent's

lottery license number which appears on the front of the winning ticket. Defendant claimed that if the lottery agent had followed standard procedure the stock control number on the back of the winning ticket would have been 232659696. Defendant further confirmed that the ticket containing the winning numbers also contained a wager on 7, 16, 18, 21, 27, and 31.

On October 19, 1988, the court granted defendant's motion for summary disposition, noting that the law required presentment before payment could be made. At that time, the court again noted its personal opposition to gambling. An order dismissing plaintiff's complaint was filed on the same date.

On appeal, plaintiff first claims that the judge should have disqualified himself given his negative opinion of gambling. In reviewing the judge's ruling, it is clear that while he expressed a personal disdain for gambling, he realized that the Legislature had provided for it. Hence, the judge's personal disdain for gambling did not affect his ability to impartially hear the case and, therefore, disqualification was not required. MCR 2.003(B).

Plaintiff next argues that the court improperly granted defendant's motion because there were factual questions to be resolved. Plaintiff is under the mistaken impression that defendant's motion for summary disposition was filed pursuant to MCR 2.116(C)(10). As noted above, defendant's motion was filed pursuant to MCR 2.116(C)(8), failure to state a claim upon which relief can be granted. Such a motion tests the legal sufficiency of the claim by the pleadings alone. *Pawlak v Redox Corp,* 182 Mich App 758, 763; 453 NW2d 304 (1990). All factual allegations in support of a claim are accepted as true, as well as all inferences which can fairly be drawn from the facts. *Id.*

Plaintiff also contends that presentment is not a condition precedent to winning the prize, but merely begins the process of validation. Plaintiff claims that the steps required before payment are: (1) filling out a claim form, and (2) validation.

We disagree. The Legislature provided that defendant's commissioner could promulgate rules regarding the manner of payment of prizes to "holders" of winning tickets. MCL 432.11(2)(e); MSA 18.969(11)(2)(e). Clearly, a holder is one in possession of a winning ticket. Moreover, the rules promulgated by defendant are consistent with the statute. 1979 AC, R 432.16(2), (4), and (5). Additionally, the terms on the back of the ticket unequivocally stated that the winning ticket be presented before payment. Plaintiff agreed to these terms when he purchased the ticket. *Coleman, supra.* The facts that a claim form is thereafter filled out and the ticket validated do not alter the requirement that the ticket must be presented.

Plaintiff further claims that MCL 440.3804; MSA 19.3804 should apply. Plaintiff notes that the ticket states on its back that it is a bearer instrument; therefore, plaintiff argues that a Lotto ticket is a negotiable instrument as defined in MCL 440.3104; MSA 19.3104 to which MCL 440.3804; MSA 19.3804 applies. In response, defendant argues that the lottery act, MCL 432.1 *et seq.*; MSA 18.969(1) *et seq.*, is a specific statute which is complete in itself and applies even though the Uniform Commercial Code, MCL 440.1101 *et seq.*; MSA 19.1101 *et seq.*, applies to commercial transactions in general. See *Sutton v Cadillac Area Public Schools,* 117 Mich App 38; 323 NW2d 582 (1982). We agree with defendant.

In any event, defendant also argues that a Lotto ticket does not fall within the definition of a negotiable instrument because it is not signed by

the maker or drawer, it does not contain an unconditional promise or order to pay a sum certain in money, and is not payable on demand or at a definite time. MCL 440.3104(1)(a)-(c); MSA 19.3104(1)(a)-(c). Assuming, arguendo, that a Lotto ticket is a negotiable instrument as defined in MCL 440.3104(1); MSA 19.3104(1), we note that MCL 440.1102(3); MSA 19.1102(3) allows the parties to vary the provisions of the Uniform Commercial Code by agreement. As noted above, plaintiff agreed to present the ticket before payment would be required. *Coleman, supra.*

Plaintiff next claims that MCR 2.113(F) provides him with a cause of action. This issue was not raised below. An issue is not preserved for appeal if it is not raised at trial, unless resolution of the issue is necessary for a proper determination of the case, the claim presents a question of law for which all facts have been presented, or manifest injustice would result. *Butler v DAIIE,* 121 Mich App 727, 742; 329 NW2d 781 (1982). MCR 2.113(F) provides that, if a claim or defense is based on a written instrument, a copy of that instrument or its pertinent parts must be attached to the pleading as an exhibit. The rule then provides for certain exceptions, including a situation where the instrument is inaccessible to the pleader and the pleading so states, giving the reason. MCR 2.113(F)(1)(c). Defendant argues that the Michigan Court Rules are procedural and do not create substantive rights. MCR 1.103. See also *Smith v Smith,* 433 Mich 606, 620; 447 NW2d 715 (1989). Again, we agree with defendant.

Finally, plaintiff claims that he is entitled to equitable relief. Defendant responds that plaintiff is not entitled to equitable relief when the statute is clear. Once again, we agree.

We note that our decision is consistent with the

decision of the New Jersey Superior Court in *Karafa v New Jersey State Lottery Comm,* 129 NJ Super 499; 324 A2d 97 (1974). The plaintiff in that case was observed by six or seven people to have a $50,000 winning lottery ticket. The plaintiff gave the ticket to his mother for safekeeping. The plaintiff's mother inadvertently discarded the winning ticket with a batch of old, worthless tickets. The director of New Jersey's lottery rejected the plaintiff's claim because he could not produce the ticket. The court noted that New Jersey's legislature had empowered the state lottery commission to promulgate rules, including "[t]he manner of payment of prizes to the holders of winning tickets." The New Jersey lottery commission promulgated rules which provided that the claimant fill out a form and present the completed form with the winning ticket; however, the director could authorize cash redemption of certain prizes upon presentation and proper validation of the winning ticket. Where cash redemption was not authorized, the claims center had to forward the winning ticket and a copy of the claim form to the New Jersey State Lottery Commission for validation. Upon validation, payment would be made. The court held that the legislature's use of the phrase "holders of winning tickets" indicated the legislature's intent to restrict payment of prizes to those who were physical holders of winning tickets. The court noted that the procedure described called for production of the winning ticket and, unless that could be done, payment was not to be made. The court stated that responsibility for nonproduction of tickets is not assumed by the state, but remains with those whose fault, neglect, carelessness or other inadvertence caused the loss.

In *Karafa,* the plaintiff also attempted to invoke the equitable remedy of establishing a lost docu-

ment and declaring him to be its owner. The court rejected the plaintiff's claim, noting that a lottery ticket is unlike other instruments which merely serve as evidence of an underlying obligation which does not change or become impaired upon loss or destruction of the written evidence. Instead, the lottery ticket itself represents the obligation and the debt and, without the ticket's surrender, the debt and the obligation remain until the period for making a claim expires.

Finally, the court in *Karafa* rejected the plaintiff's claim that it should exercise its equitable powers and award him the prize. Noting that equity follows the law, the court held that it could not establish the lost ticket by judicial declaration where the legislative mandate was otherwise. The court noted that the result reached was consistent with the Uniform Commercial Code's definition of "holder" and consistent with cases which had denied recovery to winning pari-mutuel players who had lost their tickets.

While plaintiff's predicament in the instant case is heartbreaking, we are unable to afford him the relief he requests because the law is clear. If it is of any comfort to plaintiff, others have been in similar situations. Anno: *State Lotteries: Actions by ticketholders against state or contractor for state,* 40 ALR4th 662. We now quote the opinion of the late Judge Robert M. Toms, who was quoted in *Detroit Edison Co v Janosz,* 350 Mich 606, 614; 87 NW2d 126 (1957), as follows:

> The court fervently hopes the petitioners in this case will appeal his decision and that it will be promptly and definitely reversed by the Supreme Court in which event the court will join a host of others in dancing in the streets.

Affirmed.