BEATY v HERTZBERG & GOLDEN, PC

Docket Nos. 105428, 105429. Argued October 8, 1997 (Calendar No. 7). Decided December 23, 1997.

Lavora Beaty, for herself and as personal representative of the estate of Thomas Beaty, Jr., deceased, brought an action in the Oakland Circuit Court against Hertzberg & Golden, P.C., Robert S. Hertzberg, and Judith Greenstone-Miller, attorneys for the bankruptcy trustee who supervised the liquidation of her husband's corporation, alleging breach of contract and malpractice, breach of fiduciary duty, and negligence. In June 1986, before the decedent died, his corporation was forced into bankruptcy. In July 1986, the Beatys agreed to transfer real property they personally owned to the corporation to increase its assets and convert the petition to one for chapter 11 reorganization. Robert Hertzberg was appointed trustee, and he employed his law firm to represent him in the sale of the Beatys' property.

In 1985, Thomas Beaty had purchased two $1 million life insurance policies, one naming his wife as beneficiary, and the other, the corporation. After the decedent died, the insurer denied both claims, citing a failure to pay monthly premiums in November 1987. The plaintiff as beneficiary brought an action against the insurer, which was ultimately settled, and the trustee agreed to bring an action with respect to the corporation. Judith Greenstone-Miller from his law firm was counsel. The court granted summary judgment for the insurer. The plaintiff then brought this action against the attorneys for their failure to recover the insurance proceeds. Thereafter, the plaintiff moved in the bankruptcy court to compel Hertzberg to assign the malpractice claim against his firm to her. Hertzberg resigned as trustee because of the conflict of interest created by the suit, and was replaced by another trustee. The bankruptcy court granted the plaintiff's motion, subject to the defendant's right to assert the defense of nonassignability.

The plaintiff then amended her complaint in the Oakland Circuit Court to add a cause of action based on equitable subrogation. The court, Steven N. Andrews, J., granted summary disposition for defendants. The Court of Appeals, MICHAEL J. KELLY and HOOD, JJ. (JANSEN, P.J., concurring in part and dissenting in part), affirmed in part, but reversed with regard to the equitable subrogation claim,

finding that under *Atlanta Int'l Ins Co v Bell*, 438 Mich 512 (1991), the plaintiff could employ the doctrine to avoid the defense of lack of privity and step into the shoes of the trustee to maintain the suit because the trustee would be unlikely to sue his own firm for malpractice. The Court further held that the inherent conflict of interest could form the basis for allowing the plaintiff to maintain a malpractice action against the trustee's attorneys for the benefit of the estate (Docket Nos. 152740, 155375). The defendants appeal.

In a unanimous opinion by Justice TAYLOR, the Supreme Court *held*:

The plaintiff may not invoke the doctrine of equitable subrogation to maintain a malpractice suit against the defendants. The extension of the doctrine of equitable subrogation is unwarranted in situations such as this, where the plaintiff had an adequate remedy in the context of bankruptcy proceedings and voluntarily contributed the assets at issue.

1. A legal malpractice action generally may be brought only by a client claiming damage attributable to retained counsel's negligence. Under certain circumstances, however, an attorney may be liable to third parties. The doctrine of equitable subrogation allows a wronged party to stand in the place of the client where: a special relationship exists between the client and the third party in which the potential for conflicts of interest is eliminated because, where negligence of counsel is alleged, their interests are merged; the third party lacks any other available legal remedy; and the third party is not merely a volunteer, i.e., the damage was incurred as a consequence of the third party's fulfillment of a legal or equitable duty owed the client. In this case, while there was a shared interest with regard to recovery of the insurance proceeds, the plaintiff had another adequate legal remedy available in the context of the bankruptcy proceedings. Further, the plaintiff was a volunteer; she was under no duty to contribute to the bankruptcy estate. Accordingly, she was not entitled to assert an equitable subrogation claim.

2. Third-party beneficiary liability is premised on the concept that the initial attorney-client contract unquestionably was for the benefit of the third party so as to permit the third party to maintain a suit for negligence against the attorney. In this case, had the trustee prevailed in the suit against the insurers, the only benefit accruing to the plaintiff would have been use of the life insurance proceeds to pay off other creditors of the bankruptcy estate. Clearly this was not a direct benefit to the plaintiff, but rather was incidental or indirect, rendering her claim flawed. The claim also is fatally defective because the plaintiff failed to plead facts demonstrating

her status as a named beneficiary of the contract between Hertzberg and his firm.

3. For a person who is not a client of an attorney to claim breach of fiduciary duty, there must be shown a situation in which the nonclient reasonably reposed faith, confidence, and trust in the attorney's advice. It is unreasonable for a nonclient to repose confidence and trust in an attorney where, as in this case, the interests of the client and nonclient are adverse. Further, there can be no tort liability unless the defendants owed a duty to the plaintiff. The plaintiff failed to identify any duty owed her by the defendants because there was no relationship between the parties that could give rise to either a contractual or a tort-based duty.

Affirmed in part and reversed in part.

214 Mich App 199; 543 NW2d 5 (1995) affirmed in part, reversed in part.

*Powers, Hallowell & Nickolai* (by *Karl A. Nickolai* and *Dennis N. Powers*) for the plaintiff.

*Miller, Canfield, Paddock & Stone, P.L.C.* (by *Gilbert E. Gove, Steven A. Roach,* and *Terence A. Thomas*), for defendants.

TAYLOR, J. Plaintiff, individually and as the personal representative of her late husband's estate, filed what was essentially a malpractice suit against the attorneys for the bankruptcy trustee who supervised the liquidation of her husband's corporation. The trial court granted defendants' motion for summary disposition with regard to all counts of the complaint. The Court of Appeals affirmed with regard to counts I-V of the complaint, but reversed with regard to count VI on the basis of its finding that, under this Court's decision in *Atlanta Int'l Ins Co v Bell*, 438 Mich 512; 475 NW2d 294 (1991), plaintiff could employ the doctrine of equitable subrogation to avoid the defense of lack of privity and step into the shoes of the trustee to

maintain the suit.[1] After defendant filed a claim of appeal from this portion of the decision, plaintiff filed a cross appeal, challenging the dismissal of the other counts. We affirm in part and reverse in part because the Court of Appeals erred in invoking the doctrine of equitable subrogation under the circumstances presented in this case.

I

Plaintiff's late husband, Thomas Beaty, Jr., was the majority shareholder of B & K Hydraulic Company. In June 1986, creditors forced B & K into involuntary bankruptcy. The Beatys owned real estate in Livonia that is referred to in the record as the Mayfield property. Their title to the property was by the entirety, i.e., as husband and wife. The property was not a corporate asset that would have been reachable by B & K's creditors. However, Thomas Beaty and plaintiff agreed to transfer the property to the corporation in July 1986 in order to increase the pool of corporate assets to enable a conversion of the petition to one for chapter 11 reorganization.

Initially, the bankruptcy court appointed B & K as the debtor in possession during the reorganization; however, in November 1987, it was agreed that defendant Robert Hertzberg would be appointed trustee. With the bankruptcy court's approval, Hertzberg employed his own law firm, Hertzberg & Golden, P.C., to represent him in the sale of the Mayfield property under the reorganization plan.

In 1985, Thomas Beaty had purchased two $1 million life insurance policies. One policy listed plaintiff

---

[1] 214 Mich App 199; 543 NW2d 5 (1995).

as the beneficiary, and the second "key man" policy listed B & K. After Thomas Beaty's death, plaintiff and Hertzberg, as the trustee in bankruptcy for B & K, each submitted claims to Loyal American Life Insurance for payment on the respective policies. Loyal American denied both claims because the policies had lapsed as a result of failure to pay monthly premium installments in November 1987.

Plaintiff filed suit in circuit court to recover the proceeds on the life insurance policy in which she was the named beneficiary, and Loyal American removed the case to federal court. In this litigation, plaintiff argued that the insurance company was estopped from canceling the policy because it had previously accepted late payments in connection with those policies. After its motion for summary judgment was denied, the insurer eventually agreed to a settlement of $600,000.

Plaintiff asked trustee Hertzberg to bring an action on the other policy so that the proceeds could be added to the bankruptcy estate to avoid the sale of the Mayfield property. This Hertzberg agreed to do on a contingent-fee basis. The lawyer from Hertzberg's firm who undertook this effort was Judith Greenstone-Miller. This suit was also brought in federal court. However, the estoppel argument was not raised. Plaintiff contends that this proved fatal to the trustee's claim because, upon mutual motions for summary judgment, Loyal American's motion was granted while the trustee's motion was denied. The trustee was unsuccessful in appealing this decision.

In August 1991, plaintiff filed an amended five-count complaint in the Oakland Circuit Court against

defendants[2] for their failure to recover the insurance policy proceeds, alleging claims for breach of contract and malpractice (count I), breach of fiduciary duty (count II), and negligence (counts III-V).[3] In August 1991, plaintiff filed a motion in the bankruptcy court to compel trustee Hertzberg to assign to plaintiff the malpractice claim against Hertzberg's firm and to accept funds offered by plaintiff to pay the remaining creditors, thus avoiding the sale of the Mayfield property and leaving plaintiff as the sole remaining creditor of the estate.

Before the court could rule on the motion, Hertzberg resigned as trustee because of a conflict of interest created by the suit. Stuart Gold was selected as a replacement trustee in October 1991. Plaintiff did not object to the appointment of Gold, provided he would agree to the assignment of the malpractice claim and the payoff of the other creditors. Plaintiff's motion was granted in November 1991, and the malpractice claim was assigned, expressly subject to defendants' right to assert the defense of nonassignability of this type of claim. Plaintiff subsequently amended her complaint to add a cause of action based on the doctrine of equitable subrogation (count VI).

In the circuit court, defendants moved for summary disposition pursuant to MCR 2.116(C)(8) and (C)(10). The court ultimately granted summary disposition for defendants with regard to all plaintiff's claims.[4] A

---

[2] Plaintiff sued Hertzberg only in his role as attorney for the trustee.

[3] The causes of action were entitled "Negligence-privity with trustee," "Negligence-assumption of duty," and "Negligence-intended beneficiary."

[4] The trial court's opinion did not expressly specify which subrule formed the basis for the grant; however, because it concluded that plaintiff failed "to state a claim for relief . . . against counsel for the trustee"

divided Court of Appeals panel reversed in part. The majority affirmed the trial court's order granting summary disposition with regard to all plaintiff's claims, except her claim for equitable subrogation. It held that plaintiff could state a cause of action under the doctrine of equitable subrogation because the trustee would be unlikely to sue his own firm for malpractice, and that the inherent conflict of interest could form a basis for allowing the plaintiff to maintain a malpractice action against the trustee's attorneys for the benefit of the estate. The dissent asserted that summary disposition was properly granted with regard to all plaintiff's claims.

II

We review a grant or denial of a motion for summary disposition pursuant to MCR 2.116(C)(8)  de novo. *Auto-Owners Ins Co v Harrington*, 455 Mich 377, 381, n 3; 565 NW2d 839 (1997). Defendant argues that the Court of Appeals erred in finding that plaintiff could invoke the doctrine of equitable subrogation to step into the shoes of the trustee and maintain a malpractice action against the attorneys for the trustee. We agree.

Generally, a legal malpractice action may be brought only by a client who feels that he has been damaged by retained counsel's negligence. 7 Am Jur 2d, Attorneys at Law, § 249, p 268; *Friedman v Dozorc*, 412 Mich 1, 23-25; 312 NW2d 585 (1981).  In this case, however, we are presented with the less frequently seen situation in which a third party claims that her relationship with counsel is of a nature suffi-

---

and "failed to state a claim for equitable subrogation," it is reasonable to infer that the grant was pursuant to MCR 2.116(C)(8).

client to justify the imposition of liability even in the absence of an attorney-client relationship. There has been a reluctance to permit an attorney's actions affecting a nonclient to be a predicate to liability because of the potential for conflicts of interest that could seriously undermine counsel's duty of loyalty to the client. *Friedman, supra; Atlanta Int'l, supra* at 518; anno: *Attorney's liability, to one other than immediate client, for negligence in connection with legal duties*, 61 ALR4th 615, § 8, pp 634-645.

Yet, this Court has recognized that an attorney's negligence may expose him to liability to third parties under certain circumstances. One vehicle for affording relief has been the doctrine of equitable subrogation. *Atlanta Int'l, supra* at 522. This doctrine is best understood as allowing a wronged party to stand in the place of the client, assuming specific conditions are met.[5] *Atlanta Int'l, supra* at 521-522. Those conditions are: (1) a special relationship must exist between the client and the third party in which the

---

[5] We have recognized the applicability of equitable subrogation as a basis for a claim of attorney negligence by someone other than the client only in the context of the unique relationship among an insurer, the insured, and counsel for the insured. In *Atlanta Int'l, supra* at 520, n 8, we observed that "the unique tripartite insurance context presents an analytically different public policy" from that which controlled our decision in *Friedman, supra*. Indeed, the focus of the Court's attention in that case was on "vindicating [the] public policy rationale that undergirds the attorney-client relationship in the insurance defense context." *Atlanta Int'l* at 520. One issue framed by the parties here is whether the plaintiff meets the requirements of the doctrine of equitable subrogation. While we do not discern any significant unique public policy considerations similar to those presented in *Atlanta Int'l*, in accordance with the parties' submissions, we consider whether equity requires application of the doctrine by examining whether plaintiff meets the conditions set out as justifying application of the doctrine in *Atlanta Int'l*. Our analysis here should not be interpreted as implicitly authorizing expansion of the doctrine's application to attorney negligence cases outside the insurance defense context.

potential for conflicts of interest is eliminated because the interests of the two are merged with regard to the particular issue where negligence of counsel is alleged, (2) the third party must lack any other available legal remedy, and (3) the third party must not be a "mere volunteer," i.e., the damage must have been incurred as a consequence of the third party's fulfillment of a legal or equitable duty the third party owed to the client. *Id.* at 519-523; see also *Senters v Ottawa Savings Bank, FSB*, 443 Mich 45, 56; 503 NW2d 639 (1993), and *Ramirez v Bureau of State Lottery*, 186 Mich App 275, 285; 463 NW2d 245 (1990) (holding that equity will not interfere where a legal remedy is available); *Auto Club Ins Ass'n v New York Life Ins Co*, 440 Mich 126, 132; 485 NW2d 695 (1992), *Commercial Union Ins Co v Medical Protective Co*, 426 Mich 109, 117; 393 NW2d 479 (1986), and *Smith v Sprague*, 244 Mich 577, 579-580; 222 NW 207 (1928) (holding that equitable subrogation is not available to a "mere volunteer"). In this case, plaintiff argues that she does not run afoul of the disqualifying conditions and thus can succeed to the rights of the client, trustee Hertzberg.

As to the first condition, plaintiff contends that her interests and those of the trustee were merged with regard to recovery of the life insurance policy proceeds, that is, the parties shared an interest in maximizing the assets of the bankruptcy estate so that the potential for conflict was eliminated in that aspect of the litigation. We agree that there was such a shared interest solely with regard to recovery of the insurance policy proceeds and that, for the purposes of this test, plaintiff has shown that the first condition is satisfied.

As to the second condition, lack of any other available remedy, the facts in this case show that there was another adequate legal remedy available. Although plaintiff asserts that she did not have an alternative remedy for the negligence of Hertzberg's firm, we conclude that indeed she did in the context of the bankruptcy proceedings. While it may be fair to say that Hertzberg had a conflict of interest because he would have been reluctant to sue his own firm for malpractice,[6] the successor trustee, Gold, was not so burdened. Further, trustee Gold was obligated to act in the best interests of the estate and to investigate the wrongful acts of third parties that affected the bankruptcy estate. *In re Doors & More, Inc*, 126 Bankr 43, 45 (ED Mich, 1991). It can be assumed that, recognizing the duty, he would have done what it required.

Moreover, even without reliance on the successor trustee's proper performance of his duties before Hertzberg's resignation as trustee, plaintiff could have petitioned the bankruptcy court to remove Hertzberg and order a successor trustee to investigate the way in which the suit against Loyal American was handled. It is well settled that the bankruptcy court "has an obligation to ensure that professional services provided to an estate adhere to a standard of integrity." *In re Chicago Art Glass, Inc*, 155 Bankr 180, 185 (ND Ill, 1993); *In re Sky Valley, Inc*, 135 Bankr 925, 933

---

[6] It should be noted that federal bankruptcy law expressly permits a trustee, with the approval of the bankruptcy court, to act as his own attorney. 11 USC 327(d). Opening the door to liability *only* when the trustee chooses to act as his own attorney, as suggested by the Court of Appeals decision, n 1 *supra* at 206-207, runs the risk of creating a conflict between state and federal law by interfering with the trustee's decision and the bankruptcy court's autonomy in this regard.

(ND Ga, 1992). These options were not pursued by the plaintiff. Instead, plaintiff insisted throughout the proceeding that the malpractice claim be assigned to her and opposed the appointment of the successor trustee in the event he refused to cooperate in the assignment of the claim.

We reject plaintiff's claim that any action in the bankruptcy court would have been futile because there was rampant collusion between the trustee, the successor trustee, the creditor's committee, and the trustee's attorneys. Plaintiff has made no showing whatsoever that the federal courts were disinclined to deal with the situation if, in fact, it existed. On the contrary, under 11 USC 105(a), a bankruptcy court has the authority sua sponte to take any action or make "any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." Furthermore, a bankruptcy court may, after notice and hearing, remove a trustee for cause. 11 USC 324(a); 11 USC 1104(d). There was, then, an adequate legal remedy available in the federal court, and plaintiff has failed to satisfy this condition for equitable relief.

As to the third condition, plaintiff being in a nonvolunteer status, plaintiff's claim also falls short. The record in this case demonstrates that plaintiff's financial contribution to the estate was voluntary. Without compulsion to do so, she transferred the Mayfield property to the estate and, by way of motion to compel the trustee to accept funds, contributed her personal assets to the estate. Plaintiff was under no

duty, legal or otherwise, to contribute in this fashion to the bankruptcy estate.[7]

Plaintiff, to avoid the import of the above analysis, cites cases holding that a person who pays the debt of another at the request of the debtor is entitled to all the rights and remedies against the debtor that were held by the original creditor. *Leser v Smith*, 219 Mich 509; 189 NW 38 (1922), and *Smith v Sprague*, *supra*. The cases are distinguishable because, unlike debts that may be freely assigned, a cause of action for malpractice is not assignable. *Atlanta Int'l*, *supra* at 534, n 15; *Weston v Dowty*, 163 Mich App 238, 240; 414 NW2d 165 (1987); *Joos v Drillock*, 127 Mich App 99; 338 NW2d 736 (1983). The rationale of *Leser* and *Smith v Sprague* would, at most, entitle plaintiff to the rights and remedies available to the other creditors who were paid off by her contribution to the bankruptcy estate.[8] In no event do these cases alter the fact that plaintiff was a "mere volunteer."

Consequently, plaintiff's claim fails on two of the three conditions set forth above: she had other legal remedies than this subrogation claim and she was a volunteer. Accordingly, we find that the Court of Appeals erred in reversing the trial court's grant of summary disposition for defendants, because plaintiff

---

[7] This point illustrates the way in which plaintiff's reliance on our holding in *Atlanta Int'l*, *supra*, is misplaced. In contrast to plaintiff in this case, the insurance company in *Atlanta Int'l* had a legal obligation to provide the insured with a defense under the terms of the insurance policy. *Id.* at 519.

[8] Thus, if plaintiff had, at the trustee's request, given the trustee the funds to pay off a particular creditor's claim against the bankruptcy estate, then under the holding of *Leser*, *supra*, she would be entitled to stand in the shoes of that creditor. However, plaintiff asks here for something entirely different.

was not entitled to assert an equitable subrogation claim.

III

On cross appeal, plaintiff argues that the lower courts erred in dismissing her claims of breach of a third-party beneficiary contract, breach of fiduciary duty, and her other negligence-based causes of action. We disagree.

Plaintiff argues that she was the third-party beneficiary of the contract between Hertzberg and his law firm to prosecute the claim against Loyal American. In a situation such as this, third-party beneficiary liability is premised on the concept that the initial attorney-client contract was so unquestionably for the benefit of the third party that that third party can maintain a suit for negligence by the attorney. *Mieras v DeBona*, 452 Mich 278, 300; 550 NW2d 202 (1996), quoting *McLane v Russell*, 131 Ill 2d 509, 514; 546 NE2d 499 (1989); see also 17A Am Jur 2d, Contracts, § 440, p 463. In our jurisprudence, this theory has not been expanded to cover a situation in which the benefit to the third party is one that is merely indirect, incidental, or consequential. *Greenlees v Owen Ames Kimball Co*, 340 Mich 670, 676; 66 NW2d 227 (1954); 17A Am Jur 2d, Contracts, § 443, p 467. In this situation, had the trustee prevailed in the suit against Loyal American, the only "benefit" accruing to Mrs. Beaty would have been that the proceeds from the life insurance policy would have been used to pay off the other creditors of the bankruptcy estate. This clearly is not a direct benefit to her, but to the estate. The fact that this also would have meant that the sale of the Mayfield property would not have been neces-

sary to pay off the same creditors does not convert the benefit from indirect to direct. Inasmuch as plaintiff's benefit was incidental or indirect, her claim is flawed.

In addition, plaintiff's complaint is fatally defective in that she failed to plead facts demonstrating her status as a named beneficiary of the contract between Hertzberg and his firm. This Court has held that in the context of a malpractice suit, a third party must provide proof of her status as an intended beneficiary of the attorney-client relationship in order to withstand summary disposition. *Mieras, supra* at 300; see also *Ginther v Zimmerman,* 195 Mich App 647, 655; 491 NW2d 282 (1992). Not only did plaintiff fail to plead facts demonstrating that she was the intended beneficiary of the attorney-client relationship, but she also conceded in her complaint that the prosecution of the claim against Loyal American "was legally premised upon the same being in the best interests of the bankruptcy estate . . . ." Consequently, the lower courts did not err when they concluded that plaintiff had not stated a cause of action under a theory of third-party beneficiary.

Having disposed of plaintiff's third-party beneficiary claim, we now turn to her assertion that defendants owed her an independent fiduciary duty. We find that there was none. To claim breach of fiduciary duty, there must be a situation in which the nonclient reasonably reposed faith, confidence, and trust in the attorney's advice. *Fassihi v Sommers, Schwartz, Silver, Schwartz & Tyler, PC,* 107 Mich App 509, 515; 309 NW2d 645 (1981). As is apparent, it is unreasonable for a nonclient to repose confidence and trust in an attorney when any of the interests of the client

and the nonclient are adverse. *Friedman, supra* at 23; *Atlanta Int'l, supra* at 522. Moreover, this Court has repeatedly declined to recognize a fiduciary obligation running to a potentially adverse party because such a duty would necessarily "permeate all facets of the litigation" and have a significantly deleterious effect on the attorney's ability to make decisions for the benefit of his client. *Friedman, supra* at 23; see also *Mieras, supra* at 298; accord, *Mercer v Jaffe, Snider, Raitt & Heuer, PC*, 713 F Supp 1019, 1029 (WD Mich, 1989).

Here, the interests of the plaintiff were adverse to those of the estate in significant aspects of the bankruptcy litigation. This point is pivotal because, although plaintiff and the trustee shared an interest in recovering the proceeds of the insurance policy, there were also a substantial number of issues in which plaintiff and the trustee were adverse; the trustee had commenced proceedings against the estate of Thomas Beaty, of which plaintiff is the personal representative, and against plaintiff's attorneys for improperly withholding funds and property belonging to the bankruptcy estate. The fact that plaintiff and the trustee were frequently adverse is determinative of plaintiff's fiduciary duty claim.

It is well to recall that the trustee, and of course the attorneys for the trustee, owe a singular duty to the bankruptcy estate. They may act only for the purpose of directly benefiting the estate in bankruptcy and the creditors in general. They may not represent the interests of individual creditors or shareholders. *In re Gallagher*, 70 Bankr 288, 290 (SD Tex, 1987); *In re Bell & Beckwith*, 50 Bankr 422, 434 (ND Ohio, 1985) ("[A]s representative of the estate[,] the trustee

is acting on behalf of the claims of all creditors equally and not on behalf of any individual creditor"). Accordingly, we find that the lower courts correctly determined that the trustee's attorneys did not owe plaintiff a fiduciary duty, because that duty would not be limited to a particular issue and could create significant conflicts of interest.

Finally, we affirm the dismissal of plaintiff's negligence-based causes of action. It is axiomatic that there can be no tort liability unless defendants owed a duty to plaintiff. *Simko v Blake*, 448 Mich 648, 655; 532 NW2d 842 (1995). Whether a duty of care exists because of the relationship between the parties is a question of law that is "solely for the court to decide . . . ." *Murdock v Higgins*, 454 Mich 46, 53; 559 NW2d 639 (1997); *Friedman, supra* at 22; *Moning v Alfono*, 400 Mich 425, 437; 254 NW2d 759 (1977). We agree with the conclusion of the lower courts that plaintiff failed to identify any duty owed to her by defendants because there was no relationship between the parties that could give rise to either a contractual or a tort-based duty.

IV

Because we hold, as a general proposition, that the doctrine of equitable subrogation may not be invoked to maintain a malpractice action under these circumstances, we find it unnecessary to address defendants' arguments regarding plaintiff's standing to bring this suit or her failure to obtain the approval of the bankruptcy court before filing suit. For the same reason, we need not reach the issue whether defendants' conduct could constitute malpractice.

We reverse that portion of the Court of Appeals opinion finding that plaintiff could invoke the doctrine of equitable subrogation to maintain a malpractice suit against defendants and reinstate the decision of the trial court granting summary disposition to defendants. The extension of the doctrine of equitable subrogation is unwarranted in situations such as this, where the plaintiff had an adequate remedy in the context of the bankruptcy proceedings and voluntarily contributed the assets at issue. We affirm the dismissal of plaintiff's other causes of action.

MALLETT, C.J., and BRICKLEY, CAVANAGH, BOYLE, WEAVER, and KELLY, JJ., concurred with TAYLOR, J.