Paula **LITTLEWOLF**, Appellant,

v.

James **GIRARD**, Commissioner of the Minnesota Department of Revenue, Respondent.

No. C9–99–1421.

Court of Appeals of Minnesota.

March 21, 2000.

Amber Ahola, Anishinabe Legal Services, Cass Lake, MN (for appellant).

Mike Hatch, Attorney General, Cecelia Krettek Morrow, Assistant Attorney General, St. Paul, MN (for respondent).

Considered and decided by RANDALL, Presiding Judge, TOUSSAINT, Chief Judge, and HUSPENI, Judge.

## OPINION

DORIS O. HUSPENI, Judge.*

Reservation resident challenges the district court's award of summary judgment to the Minnesota Department of Revenue, determining that resident's lottery winnings were subject to Minnesota taxation. Because the lottery winnings constitute income earned off the reservation and because eligibility for the income was satisfied only upon compliance with Minnesota statutes, rules, and game procedures adopted by the director of the lottery, we affirm.

## FACTS

The parties stipulated to the facts of this matter. Paula Littlewolf, a resident of the White Earth Reservation, purchased a winning Minnesota State Lottery "High Stakes II" instant game ticket from the Village Store, located within the White Earth Reservation boundaries. On May 17, 1996, Littlewolf traveled to Roseville, Minnesota, state lottery headquarters, to claim her $100,000 prize. She presented her ticket and filled out a state lottery ticket claim form. Verification and validation procedures were conducted and Littlewolf was paid the $100,000, less $28,000 for federal income taxes, $532 in other deductions, and $8,000 for state income taxes.

In 1997, Littlewolf filed a 1996 Minnesota income tax return, claiming that she was entitled to an $8,000 refund because

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

she was exempt from state taxes. The Minnesota Department of Revenue denied Littlewolf's claim, and she brought an action in district court. On cross-motions for summary judgment, the court denied Littlewolf's motion and granted that of the Department of Revenue, finding that the winnings were subject to Minnesota taxation because the activity to earn the lottery income was conducted off the reservation at the Minnesota State Lottery headquarters in Roseville.

## ISSUE

Did the district court err by finding that the lottery ticket sold within the boundaries of the reservation was not income derived from an activity on the reservation?

## ANALYSIS

The district court cited Minn.Stat. § 290.92, subd. 29 (1996), as authority to treat Littlewolf's lottery winnings as a wage paid by an employer to an employee and found that Littlewolf earned the winnings in Roseville (off the reservation) when she complied with the presentation and verification requirements set by the Minnesota State Lottery. The parties do not dispute that lottery winnings are to be treated as income. They do dispute, however, the decisive question of where that income was earned. Two United States Supreme Court cases assist our analysis of this issue.

■ Littlewolf argues that her lottery winnings were income earned on the reservation and, therefore, *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973), controls the result that we must reach. In *McClanahan*, the Court ruled that a state has no jurisdiction to impose a tax on income earned by Indians residing on a reservation when that income was wholly derived from reservation sources. The Court declared that by taxing such income the state "interfered with matters which the relevant treaty and statutes leave to the exclu-

sive province of the Federal Government and the Indians themselves." *Id.* at 165, 93 S.Ct. at 1259.

The Minnesota Department of Revenue successfully argued in the district court that Littlewolf's income was earned off the reservation and, therefore, *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973), a companion to *McClanahan*, controls. In *Mescalero*, the Court ruled that a state may impose a nondiscriminatory gross-receipts tax on a ski resort operated by an Indian tribe on off-reservation land. *Id.* at 148–49, 93 S.Ct. at 1270–71.

We conclude, as did the district court, that Littlewolf's lottery winnings constituted income earned off the reservation, and thus were subject to Minnesota state income tax.

Minnesota Statutes section 290.92, subd. 29, which governs state taxing of lottery prizes, states

Eight percent of the payment of Minnesota state lottery winnings which are subject to withholding must be withheld as Minnesota withholding tax. * * * For purposes of the provisions of this section, a payment to any person of winnings which are subject to withholding must be treated as if the payment was a wage paid by an employer to an employee.

This language simplifies the treatment of lottery winnings, explaining that they are to be treated as though paid by an employer. In this case, the entity treated as the employer is the Minnesota State Lottery located in Roseville at the Minnesota State Lottery headquarters.

■ Further, Littlewolf was required to comply with the verification and validation procedures of the lottery statutes and rules at the lottery headquarters. This action may be construed as the work the employee completed for the employer; work that was performed off the reservation. Littlewolf was required to follow the

verification and validation procedures completed by lottery staff located in Roseville before she was entitled to any winnings.

Minnesota Statutes section 349A.08, subd. 1 (1996), governing lottery rules, states:

> A person who buys a lottery ticket agrees to be bound by the rules applicable to the particular lottery game for which the ticket is purchased. The player acknowledges that the determination of whether a ticket is a valid winning ticket is subject to the rules of the director, claims procedures established by the director for that game, and any confidential or public validation tests established by the director for that game.

This language verifies that lottery ticket purchasers enter into an agreement with the Minnesota State Lottery requiring purchasers to follow the rules promulgated by the lottery in order to qualify for payment on a ticket in the purchaser's possession.

Littlewolf's winnings were earned by agreement when she presented her ticket and the claim form, and completed the validation and verification procedures at the lottery headquarters in Roseville. *See Ramirez v. Bureau of State Lottery*, 186 Mich.App. 275, 463 N.W.2d 245, 247 (1990) (presentment of winning ticket is a condition precedent to winning the prize), *appeal denied*, 439 Mich. 861, 475 N.W.2d 819 (1991); *Coleman v. State*, 77 Mich. App. 349, 258 N.W.2d 84, 86 (1977) (lottery winner's entitlement to a prize is governed by principles of contract law); *Karafa v. New Jersey State Lottery Comm'n*, 129 N.J.Super. 499, 324 A.2d 97, 99 (Ch.1974) (regulations of state lottery must be followed in order to receive prize).

Because Littlewolf earned her winnings off the reservation, those winnings cannot be tax exempt under *McClanahan*. They are taxable under *Mescalero*.

Although the issue in this case is resolved upon our determination that the income from lottery winnings is earned off the reservation and as such is taxable, we find further support for our decision in an observation of the court in *Mescalero*:

> [E]ven on reservations, state laws may be applied unless such application would interfere with reservation self-government or would impair a right granted or reserved by federal law.

*Mescalero*, 411 U.S. at 148, 93 S.Ct. at 1270.

■ We are unable to discern how, in any manner or to any extent, compliance with Minnesota State Lottery statutes could interfere with reservation self-government or would impair a right granted or reserved by federal law. The ability of Littlewolf to purchase a lottery ticket at a store located on the reservation was made possible only when lottery officials decided to permit that store to sell Minnesota State Lottery tickets. There was no inherent right on the part of the store, nor obligation on the part of the Lottery, to enter into a relationship regarding selling of lottery tickets.

The transaction giving rise to Littlewolf's entitlement to her $100,000 in lottery winnings arose and was governed by Minnesota statutes and agency rules and procedures that detailed with great specificity the rights and obligations of all entities involved in that transaction and which defined the procedures to be followed and the requirements to be met before Littlewolf was entitled to those winnings. *See* Minn.Stat. § 349A.02 (1996); Minnesota State Lottery, *Instant Games Control: Validation Procedures for Winners over $30,000* (May 6, 1996).[1] Neither the self-

---

1. Procedures required by the Lottery for prize claims more than $30,000, include:
    (a) verifying the identity of a claimant, by requiring a picture I.D. and comparing the signatures on the picture I.D., ticket and claim form;
    (b) verifying the eligibility of the claimant (i.e., not a Lottery employee, etc.);
    (c) visually examining the ticket to determine its authenticity;

government of an Indian reservation nor any right granted or reserved by federal law is implicated in this case.

### DECISION

The district court properly determined that Minnesota state lottery winnings are subject to state income taxation when the winning ticket is purchased on reservation property.

**Affirmed.**

(d) identifying the retailer where the ticket was sold to verify that the ticket was among those the retailer had to sell;

(e) calling the retailer to verify that they sold the ticket and have not had any problems with the pack the ticket was in, i.e., no thefts or other irregularities;

(f) review the Lottery's computerized information on the redemption/payment of prizes for other tickets in the same pack to detect irregularities;

(g) determine from the Lottery's secure computerized data base that the ticket presented is a valid winner;

(h) review computerized information provided by the Minnesota Department of Revenue to the Lottery to determine if any revenue recapture is required;

(i) personally call the Department of Revenue to assure the most current revenue recapture information is acted on;

(j) prepare appropriate warrant and W–2G; and

(k) have the ticket, claim form, internal documentation, warrant and W–2G reviewed by the Lottery's Security, Accounting and Executive personnel.

Minnesota State Lottery, *Instant Games Control: Validation Procedures for Winners over $30,000* (May 6, 1996)